STATE OF MAINE                          SUPERIOR COURT
                                        CIVIL ACTION
YORK, ss.                               DOCKET NO. AP-04-047

                                        *C-M- (F- a*

                           *
JOANNE FILLMORE,           *
                           *
            Plaintiff      *
                           *
      v.                   *            ORDER
                           *
                           *
THE INHABITANTS OF THE     *
TOWN OF ELIOT,             *
                           *
            Defendant      *
                           *


        This case comes before the Court on Petitioner Joanne Fillmore's Rule 80B

Appeal of a decision by the Town of Eliot Zoning Board of Appeals denying her

a growth permit.

                        **FACTUAL BACKGROUND**

        Joanne Fillmore (Petitioner) owns property located on Green Briar Drive

in the Briarwood subdivision in the Town of Eliot. She has been the owner since

1974. The property is a corner lot abutting Greenbriar Drive on one side and

Michael Drive on the other. For purposes of ingress and egress to Petitioner's

property, one would travel on Greenbriar Drive north to Stacy Lane, in order to

access Worster Road. Greenbriar Drive and Stacy Lane are private rights of way

while Worster Road is a public road. Greenbriar Drive is 40 feet wide. Stacy

Lane is 40 feet wide in most areas, but has been narrowed over the years to 15

feet in a few areas. The subdivision was approved by the Town and recorded in

the Registry of Deeds in 1968.

In 1982, the Town enacted a Municipal Zoning Code that, inter alia, restricts the development of lots considered to be "back lots".

On February 19, 2004, Petitioner applied for a growth permit from the Town to build a single-family home on the property. The Code Enforcement Officer (CEO) denied this application on grounds that the property is a backlot with no direct street frontage pursuant to section 45-405(m)(1) of the Eliot Municipal Zoning Code (the "Code"). Petitioner filed a timely appeal to the Zoning Board of Appeals (ZBA).

On April 15, 2004, the ZBA held a public hearing on Petitioner's appeal of the CEO's determination. In the course of the hearing, the ZBA heard from the respective parties, neighboring abutters, and other interested parties who objected to Petitioner's application. The ZBA denied Petitioner's administrative appeal. On May 28, 2004, Petitioner appealed that decision pursuant to M.R. Civ. P. 80B. By order of April 29, 2005, this Court held that Gail Licciardello, Kenneth Albert, and Michael and Lynn-Marie Gildersleeve had standing to challenge Petitioner's 80B appeal.

## DISCUSSION

### A. STANDING

Before discussing the merits of the case, the Court will first address the issue of standing. To appeal a decision of the ZBA, a party must have participated before the board and must have demonstrated a particularized injury. *Brooks v. Cumberland Farms, Inc.*, 1977 ME 203, ¶ 8, 703 A.2d 844, 847; Me. Rev. Stat. Ann. tit. 30-A, § 2691(3)(G) (2003); *Wells v. Portland Yacht Club*, ME 2001, ¶ 4, 771 A.2d 371, 373 (holding that residents on a road where a building was to

be constructed had a particularized injury due to concerns for traffic, noise, and aesthetics).

The Court held that Gail Licciardello and Kenneth Albert had standing because they were both present and testified before the ZBA about safety concerns due to an increase in traffic on Stacy Lane. Although Michael and Lynn-Marie Gildersleeve were not physically present before the ZBA, they sent a letter to the ZBA before the appeal articulating similar traffic and safety concerns.[1]

As for additional interveners Nicolas Papin, Daniel Stout, Jeffrey Tavares and Joan Ferguson, the Court holds that they lack the necessary standing to object to Petititioner's 80B appeal. These interveners failed to participate in the ZBA proceedings to voice their concerns. Although, arguably, they may suffer a particularized injury due traffic and safety concerns, they do not satisfy the first prong of the standing requirement.

B.     80B APPEAL

The Superior Court, acting in its intermediate appellate capacity, reviews the findings of the ZBA for abuse of discretion, errors of law, or findings unsupported by substantial evidence. *Priestly v. Town of Hermon*, 2003 ME 9, ¶ 6, 814 A.2d 995, 997; M.R. Civ. P. 80B(f). Interpretations of zoning ordinances are questions of law and are therefore reviewed de novo. *Isis Development, LLC v. Town of Wells*, 2003 ME 149, ¶ 3, 836 A.2d 1285. Accordingly, when construing the language of an ordinance, courts look first to the plain meaning of the language of the ordinance to give effect to the legislative intent. *Lewis v. Town of Rockport*, 2005 ME 77, ¶ 11; 870 A.2d 107, 110. The burden is on the plaintiff to

---

[1] This letter is not mentioned in the notes of the ZBA hearing.

prove that, based on the evidence in the record, the ZBA should have reached a different conclusion. *Britton v. Town of York, 673 A.2d 1322, 1325 (Me. 1996).*

The dispute in this case arises not from the facts, but rather from the interpretation of the backlot provision and the grandfather provision in the Code. The ZBA denied Petitioner's appeal on grounds that her property is a backlot pursuant to § 45-405(m). Petitioner argues that the ZBA erroneously found her property to be a backlot pursuant to § 45-405(m). Alternatively, Petitioner argues that even if the property is a backlot, it is a grandfathered nonconforming lot of record pursuant to § 45-194(b).

### 1. Petitioner's Property is Not a Backlot Pursuant to § 45-405(m)

Section 45-405(m) provides that backlots may be developed as long as the proposed lot physically lies behind one or more other lots preventing direct street frontage and it is served by a 30-foot right-of-way for one or two backlots.[2] Although the term backlot is not defined in the Code, the Law Court defined a backlot pursuant to the same provision as a lot "physically situated behind one or more lots, having no direct street frontage." *Bishop v. Town of Eliot, 529 A.2d 798 (Me. 1987)* (finding that both lots were physically behind other lots and

---

[2] § 45-405(m) Backlots may be used provided they meet the following criteria:

1. The proposed lot physically lies behind one or more other lots, preventing direct street frontage.
2. A 30-foot right-of-way or frontage shall serve one or two backlots. For three or more backlots, the right-of-way or frontage shall be at least 40 feet and the driveway serving the backlots shall be graveled, tarred, or paved, and shall be at least 15 feet wide.
3. An existing right of way with a minimum width of 15 feet shall serve one or two nonconforming backlots.
4. To ensure a properly sized lot, the front lot line shall be the rear lot line of abutting front lots, including the street right-of-way or frontage for the district in which the lot is located.
5. Principal and accessory buildings and uses of front lots shall be set back at least ten feet from any right-of-way, if used.
6. All other dimensional requirements shall apply to the backlot.
7. This provision for backlots shall not apply to proposed subdivisions.

accessible to a public street over narrow rights of way measuring less than 30 feet wide).

Although the ZBA determined that Petitioner's property is a backlot pursuant to § 45-405(m), it did not specifically find that the property physically lies behind another lot. Rather, the record shows that Greenbriar Drive can be accessed directly from the Property.[3] Consequently, the pertinent inquiry is whether Greenbriar Drive is a street. Pursuant to the definitions of the Code, § 1-2, a street can be established in one of two ways: 1) by meeting the street design and construction standards pursuant to § 37-70;[4] and 2) as a highway, avenue, boulevard, road, town way, lane, bridge, and *all other ways dedicated to public use.* The ZBA correctly determined that Greenbriar Drive does not meet the street ordinance standards for an accepted street. The record shows that Greenbriar Drive is 40 feet wide, ten feet shy of the 50 feet requirement under § 37-70. However, the ZBA failed to consider that the Code recognizes ways dedicated to public use as streets. The record shows that Greenbriar Drive is used by at least six other residences located on Greenbriar Drive, Bayview Drive, and DC Drive.[5] Therefore, it is clear from the record that Greenbriar Drive is a street dedicated to public use.

The Town argues that the analysis should focus on whether Stacy Lane, not Greenbriar Drive, provides direct street frontage to the property in accordance with § 45-405(m). The Town takes this position because Petitioner's property, although located on Greenbriar Drive, must utilize Stacy Lane for

---

[3] The ZBA labeled the lot a backlot without finding that the lot is physically located behind another lot.

[4] Section 37-70 provides, in relevant part, that streets must be at least 50 feet wide.

[5] See Record, pp. 15-20, 59.

purposes of ingress and egress into the subdivision. The record shows that Stacy Lane is approximately 895 feet from Petitioner's property.[6] To interpret the language "direct street frontage" to require any road within 895 hundred feet of the property to comply with § 45-405(m) would completely change the common sense meaning of the word direct. Accordingly, the use of Stacy Lane to satisfy the direct street frontage requirement is not consistent with the language of the code.

Therefore, because the record shows that Greenbriar Drive is a way dedicated to public use, it is a street as defined by the Code. Furthermore, Greenbriar Drive provides direct street frontage to the Property. Thus, because Greenbriar Drive provides direct street frontage to the Property, the ZBA erred in finding that the property is a backlot pursuant to § 45-405(m).

### 2. Petitioner's Property is Grandfathered Pursuant to § 45-194(a)

The Town relies on *Bishop v. Town of Eliot* for the proposition that while nonconforming single lots of record prior to the enactment of the Code are grandfathered pursuant to § 45-194(a),[7] they still must comply with the other provisions of the chapter, including the backlot provision. In *Bishop*, the lots in question were backlots because they were situated physically behind another lot and without direct street frontage meeting the requirements of § 45-405(m).

Here, the property was a lot of record prior to the enactment of the Code in accordance with § 45-194(a). However, contrary to *Bishop*, Petitioner's lot is

---

[6] See Record, p. 13.

[7] Section 45-194(a) provides: "[i]f a single lot of record on the effective date of the adoption or amendment of this chapter does not meet the area, road frontage or setback requirements of the district in which it is located, it may be built on provided that such lot is in separate ownership and not contiguous with any other lot in the same ownership, that all other provisions of this chapter are met and it conforms with all state laws and regulations."

not a backlot as explained above. Therefore, it is a grandfathered nonconforming lot that need not comply with § 45-405(m).

The decision of the ZBA that Petitioner's property is a backlot is

**REVERSED**.

DATE: 9/12/25

Justice, Superior Court

PLAINTIFF:
Durward Parkinson, Esq.
BERGEN AND PARKINSON
62 Portland Rd  Post Road Center
Kennebunk Me 04043


DEFENDANT:
Christopher Vaniotis, Esq.
BERNSTEIN SHUR SAWYER AND NELSON
PO Box 9729
Portland Me 04112-5029

INTERVENORS, N. PAPIN, G. LICCIARDELLO
William Dale, Esq.
JENSEN BAIRD GARDNER AND HENRY
PO Box 4510
Portland Me  04112-4510